Lansing rebutted this presumption, because the special master determined that O'Neil had not communicated Horizon's confidential information to Lansing's counsel. This finding is not clearly against the weight of the evidence. We adopt this finding, and conclude that because O'Neil did not share confidential information with Lansing or Lansing's counsel, disqualification of Lansing's counsel is not required. Horizon's application for a writ of mandamus is denied.

Writ of mandamus denied.

Miller-Lerman, J., not participating.

———————

Pinnacle Enterprises, Inc., appellant and cross-appellee, v. City of Papillion, a municipal corporation, appellee and cross-appellant.

___ N.W.2d ___

Filed July 26, 2013.    No. S-12-385.

1. **Judgments: Jurisdiction.** Jurisdictional questions that do not involve a factual dispute present questions of law.
2. **Statutes: Judgments: Appeal and Error.** The meaning and interpretation of a statute are questions of law. An appellate court independently reviews questions of law decided by a lower court.
3. **Jurisdiction: Appeal and Error.** An appellate court has a duty to raise and determine any jurisdictional issue of its own accord.
4. **Jurisdiction: Time: Appeal and Error.** A party has only 30 days to appeal from a final order, and a party's failure to timely appeal from a final order prevents an appellate court from exercising jurisdiction over the issues raised and decided in that order.
5. **Eminent Domain.** Condemnation proceedings are special proceedings.
6. **Actions.** A "claim for relief" under Neb. Rev. Stat. § 25-1315(1) (Reissue 2008) is equivalent to a separate cause of action.
7. **Eminent Domain: Parties: Appeal and Error.** In a condemnation action, because a district court appeal is a de novo proceeding, which contemplates the filing of pleadings and the framing of issues, no longer is the condemnee automatically the plaintiff in the district court proceeding. Rather, who the plaintiff is depends on who appeals first from the appraisers' award.

Appeal from the District Court for Sarpy County: Daniel E. Bryan, Jr., Judge. Affirmed.

Paul F. Peters, P.C., L.L.O., for appellant.

Michael N. Schirber, of Schirber & Wagner, L.L.P., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Connolly, J.

## SUMMARY

The City of Papillion (City) condemned property owned by Pinnacle Enterprises, Inc. (Pinnacle), for the City's Schram Road project. The project connected various streets by building a new road and accompanying fixtures on Pinnacle's former property. Along with the road, the City built an iron fence on the north side of the new road, which abutted Pinnacle's remaining property. Pinnacle alleges that (1) the City lacked statutory authority to condemn the property for the fence and, alternatively, (2) the City imposed a second taking by building the fence and limiting its access to the new road. Because Pinnacle failed to timely appeal those issues, we do not reach them.

The City cross-appealed, alleging that the district court erred in granting Pinnacle interest, fees, expenses, and costs because the jury verdict did not exceed the City's prior offer to confess judgment. We conclude that the court correctly applied the statutes at issue and properly awarded Pinnacle interest, fees, expenses, and costs. We affirm.

## BACKGROUND

The City wanted some of Pinnacle's land for a project to "redesign[], relocat[e] and mak[e] improvements to Schram Road . . . including paving, grading, curbing, integral storm sewers, decorative lighting and other necessary appurtenant improvements." The City intended to build a new road, as an extension of the then-existing Schram Road, to connect several arterial streets. Because Pinnacle and the City could not agree, the City decided to condemn the property.

In its initial filing in county court, the City set out the property it sought to condemn, its authority to do so, the purpose for the condemnation, and the parties' failure to reach an agreement. The City sought to acquire some property in

fee simple (upon which the fence was eventually built), but sought only temporary and permanent easements (for grading and storm sewers) in other property. The county court later appointed appraisers to assess the damages of the proposed taking. The appraisers awarded Pinnacle $344,215.15. Pinnacle appealed to the district court, initially alleging only that the appraisers' award was insufficient.

The City offered to confess judgment for $500,000,[1] which Pinnacle refused. Before trial, Pinnacle filed what it termed its "Dispositive Pre-trial Motions." Those motions essentially claimed—in addition to the insufficiency of the appraisers' award—that the condemnation was void because the City (1) failed to negotiate in good faith and (2) lacked statutory authority to condemn Pinnacle's property for the fence. The parties agreed to try these issues to the court and reserve the sufficiency of the appraisers' award for a later jury trial.[2] Later, Pinnacle amended its petition to include these issues.

At the bench trial, Pinnacle argued that the easements were fatally vague, that the City lacked authority under Neb. Rev. Stat. § 19-709 (Reissue 2012) to condemn its property for a fence, that the City had not negotiated in good faith, and that the City had worked a second taking on Pinnacle by erecting the fence. The court found otherwise:

> [T]he City . . . did negotiate in good faith with Pinnacle . . . prior to the City['s] filing eminent domain proceedings in the County Court . . . .
>
>     . . . [T]he fence referenced in [Pinnacle's] Dispositive Pre-Trial Motions, does not constitute a second eminent domain taking and the Court specifically finds against [Pinnacle] and in favor of the [City] on all issues raised by [Pinnacle's] Dispositive Pre-trial Motions . . . .

Pinnacle did not appeal this order.

---

[1] See Neb. Rev. Stat. §§ 25-901 and 25-906 (Reissue 2008).

[2] See, *SID No. 1 v. Nebraska Pub. Power Dist.*, 253 Neb. 917, 573 N.W.2d 460 (1998); *Moody's Inc. v. State*, 201 Neb. 271, 267 N.W.2d 192 (1978); *Suhr v. City of Seward*, 201 Neb. 51, 266 N.W.2d 190 (1978). See, also, *Krupicka v. Village of Dorchester*, 19 Neb. App. 242, 804 N.W.2d 37 (2011).

Before proceeding to a jury trial on the appraisers' award, the City again offered to confess judgment for $500,000. Pinnacle refused that offer. At the jury trial, both parties presented evidence, including expert testimony, on the damages suffered. The jury awarded $432,661 in damages.

Following the jury trial, the court awarded Pinnacle interest, attorney and expert witness fees, expenses, and costs. In its order, the court determined that under Neb. Rev. Stat. § 76-711 (Reissue 2009), Pinnacle was entitled to $99,159.22 in interest because the jury's verdict exceeded the appraisers' award. The court then determined that because the jury verdict exceeded the appraisers' award by more than 15 percent, under Neb. Rev. Stat. § 76-720 (Reissue 2009), the court awarded Pinnacle $100,369.80 in attorney fees and $9,900 in expert witness fees. And the court awarded Pinnacle $1,419.50 in deposition expenses. The court also determined that the jury verdict and interest exceeded the City's $500,000 offer to confess judgment, so the court awarded Pinnacle costs.

## ASSIGNMENTS OF ERROR

Pinnacle assigns, restated, that the court erred in concluding that (1) the City had statutory authority to condemn the property for the fence and (2) the City's building of the fence was not a second taking that limited Pinnacle's access to the new road.

On cross-appeal, the City assigns, reordered and restated, that the court erred in (1) granting Pinnacle interest because the jury verdict did not exceed the City's $500,000 offer to confess judgment and (2) granting Pinnacle fees, expenses, and costs because the jury verdict did not exceed the City's $500,000 offer to confess judgment by more than 15 percent.

## STANDARD OF REVIEW

[1] Jurisdictional questions that do not involve a factual dispute present questions of law.[3]

---

[3] See, e.g., *In re Interest of Edward B.*, 285 Neb. 556, 827 N.W.2d 805 (2013).

[2] The meaning and interpretation of a statute are questions of law.[4] We independently review questions of law decided by a lower court.[5]

## ANALYSIS

### Final Order

[3,4] Although neither party raised or discussed whether the court's order resolving the issues addressed in the bench trial was a final, appealable order, an appellate court has a duty to raise and determine any jurisdictional issues of its own accord.[6] A party has only 30 days to appeal from a final order,[7] and a party's failure to timely appeal from a final order prevents an appellate court from exercising jurisdiction over the issues raised and decided in that order.[8]

Here, Pinnacle filed its appeal on May 2, 2012 (within 30 days of judgment on the jury verdict), but the issues that Pinnacle raised on appeal—whether the City had authority under § 19-709 to condemn its property for the fence and whether construction of the fence was a second taking—were resolved by the court's order on January 27. The issue is whether that order was a final, appealable order. We issued an order to show cause to the parties to give them an opportunity to respond to the order. After receiving and considering their responses, we conclude that the January order was final, that Pinnacle failed to timely appeal the issues it now raises, and that we are without jurisdiction to address those issues.

[5] Under Neb. Rev. Stat. § 25-1902 (Reissue 2008), the three types of final orders are (1) an order which affects a

---

[4] See, e.g., *Bacon v. DBI/SALA*, 284 Neb. 579, 822 N.W.2d 14 (2012); *In re Interest of Trey H.*, 281 Neb. 760, 798 N.W.2d 607 (2011).

[5] See, e.g., *Beveridge v. Savage*, 285 Neb. 991, 830 N.W.2d 482 (2013).

[6] See, e.g., *Connelly v. City of Omaha*, 278 Neb. 311, 769 N.W.2d 394 (2009).

[7] See Neb. Rev. Stat. § 25-1912(1) (Reissue 2008).

[8] See, *State v. Poindexter*, 277 Neb. 936, 766 N.W.2d 391 (2009); *In re Interest of B.M.H.*, 233 Neb. 524, 446 N.W.2d 222 (1989). Cf. *Selma Development v. Great Western Bank*, 285 Neb. 37, 825 N.W.2d 215 (2013).

substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered.[9] Here, only the second type of final order—an order affecting a substantial right made during a special proceeding—is at issue. We have long held that condemnation proceedings are special proceedings.[10] So whether the court's January 2012 order was a final order—and thus whether Pinnacle should have appealed it—depends on whether that order affected a substantial right of Pinnacle.

The meaning of a "substantial right" is somewhat vague. We have stated that a substantial right is an essential legal right, not a mere technical right.[11] We have also stated that a substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant before the order from which the appeal is taken.[12]

We turn now to the court's order and whether it affected a substantial right. The order denied Pinnacle's "Dispositive Pre-Trial Motions," which argued, among other things, that the City lacked statutory authority under § 19-709 "to use eminent domain to acquire right-of-way for a fence" and that the City's "construction of such fence amounted to a second taking and subsequent condemnation of [Pinnacle's] property." We will address each ruling in turn.

The court's ruling that the City had statutory authority to condemn the property for the construction of a fence was a final, appealable order. This conclusion flows from our reasoning in *SID No. 1 v. Nebraska Pub. Power Dist.*[13] In

---

[9] See, e.g., *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012).

[10] See, e.g., *SID No. 1, supra* note 2; *Higgins v. Loup River Public Power Dist.*, 159 Neb. 549, 68 N.W.2d 170 (1955); *Webber v. City of Scottsbluff*, 155 Neb. 48, 50 N.W.2d 533 (1951).

[11] See, e.g., *SID No. 1, supra* note 2.

[12] See *id.*

[13] *Id.*

that consolidated case, the condemnor sought to condemn two parcels of land in which the condemnee had an interest. The appraisers entered awards for the condemnee, which it appealed to the district court. In its amended petitions on appeal, the condemnee alleged, among other things, that "the subject parcels were public property over which [the condemnee] had no statutory power of eminent domain and prayed that the court declare the attempted condemnation void."[14] The court held a bench trial solely on this issue, "reserving for later determination other issues, including the adequacy of damages awarded by the appraisers."[15] When the court held that the condemnor had authority to condemn the property, the condemnee appealed.[16]

We first addressed whether the orders were final, because other issues—including the adequacy of the damages—were still pending before the court. We noted that whether the orders were final depended on whether they qualified under one of the three categories enumerated in § 25-1902. Because a condemnation proceeding was a special proceeding, we asked only whether the orders affected a substantial right. We noted that "[a] substantial right is affected if the order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which the appeal is taken."[17] And because the orders "eliminated what [the condemnee] alleged to be a complete defense to condemnation," they affected a substantial right and the orders were final and appealable.[18]

Similarly, the court's order here eliminated what Pinnacle alleged to be a defense to condemnation—that the City had no authority to condemn property for construction of a fence. And although Pinnacle did not allege that such a finding would

---

[14] *Id.* at 920, 573 N.W.2d at 464.

[15] *Id.*

[16] See *SID No. 1, supra* note 2.

[17] *Id.* at 921, 573 N.W.2d at 465.

[18] *Id.*

necessarily render the whole condemnation void (it focused on removing the fence), that would be its effect; a finding that a portion of the taking was unlawful would require a "do-over" of the condemnation proceeding. This is because the initial appraisers' award valued the entire taking; if that award encompassed property which should not have been included, then the award would be inaccurate. This would affect the district court appeal because the court determines the award of interest, fees, expenses, and costs by comparing the jury's assessment of damages and the appraiser's award.[19] So, concluding that part of a taking is void renders the whole taking void because the proceeding must begin anew. We conclude that the court's ruling that the City had authority under § 19-709 to condemn Pinnacle's property for the construction of a fence was a final, appealable order. Pinnacle did not timely appeal that order, and we are precluded from addressing the issue now.

The court's ruling that the City's construction of the fence was not a second taking was also a final, appealable order. We read the court's order as concluding that the construction of the fence was simply not a taking. This reading is supported by various portions of the bill of exceptions and by the court's later ruling that Pinnacle was foreclosed from adducing evidence of its purported damages from the fence's construction (which the court would have allowed had it considered it to be a taking involved in the current condemnation proceeding).

Remember, "[a] substantial right is affected if the order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which the appeal is taken."[20] The court's order meant that Pinnacle could not adduce evidence of any purported damage from the City's building of the fence in the present proceeding. Notably, too, it meant that Pinnacle was

---

[19] See §§ 76-711 and 76-720.

[20] *SID No. 1, supra* note 2, 253 Neb. at 921, 573 N.W.2d at 465.

effectively foreclosed from bringing a subsequent inverse con-
demnation proceeding, which Pinnacle sought to do, because
the court ruled it was not a taking. This order affected a sub-
stantial right, and so it was a final order from which Pinnacle
failed to timely appeal. We are precluded from addressing the
issue now.

We note briefly that Pinnacle, in its response to our order
to show cause, argued that the January 2012 order was not
final because the order did not comply with Neb. Rev. Stat.
§ 25-1315(1) (Reissue 2008). That section states, in rele-
vant part:

> When more than one claim for relief is presented in an
> action, . . . or when multiple parties are involved, the
> court may direct the entry of a final judgment as to one
> or more but fewer than all of the claims or parties only
> upon an express determination that there is no just rea-
> son for delay and upon an express direction for the entry
> of judgment.

Pinnacle argues that because it presented multiple claims for
relief (which were not all resolved), and because the court did
not expressly state that the January order was final, it was not
a final order.

[6] But § 25-1315(1) does not apply here because there
are not multiple "claim[s] for relief" within the meaning of
§ 25-1315(1). We have explained, in prior cases, that a "claim
for relief" under § 25-1315(1) is equivalent to a separate cause
of action.[21] A cause of action "consists of the fact or facts
which give one a right to judicial relief against another . . . .
Two or more claims in a petition arising out of the same opera-
tive facts and involving the same parties constitute separate
legal theories . . . and not separate causes of action."[22] Here,
there was but one cause of action and therefore only one
"claim for relief" under § 25-1315(1).

---

[21] See, e.g., *Bailey v. Lund-Ross Constructors Co.*, 265 Neb. 539, 657 N.W.2d 916 (2003); *Keef v. State*, 262 Neb. 622, 634 N.W.2d 751 (2001).

[22] *Saunders County v. City of Lincoln*, 263 Neb. 170, 174, 638 N.W.2d 824, 827 (2002).

### CROSS-APPEAL

As our appellate rules explain, "[t]he proper filing of an appeal shall vest in an appellee the right to a cross-appeal against any other party to the appeal. The cross-appeal need only be asserted in the appellee's brief as provided by § 2-109(D)(4)."[23] The City properly asserted its cross-appeal in its brief.

The City disagrees with the court's award of interest, fees, expenses, and costs to Pinnacle. The City claims that the court erred in entering the award because the jury verdict did not exceed the City's prior offer to confess judgment. But the initial question is whether the City could offer to confess judgment. We conclude that it could not and, furthermore, that the court's award of interest, fees, expenses, and costs was proper.

Both §§ 25-901 and 25-906 relate to offers to confess judgment. Section 25-901 is applicable here, rather than § 25-906, because the offer to confess judgment did not come "in court" under § 25-906 but through an "offer in writing" under § 25-901. Section 25-901 states, in relevant part:

> The defendant in an action for the recovery of money only, may, at any time before the trial, serve upon the plaintiff, or his attorney, an offer in writing to allow judgment to be taken against him for the sum specified therein. . . . If the plaintiff fails to obtain judgment for more than was offered by the defendant, he shall pay the defendant's cost from the time of the offer.

The question is whether § 25-901 applies in a condemnation proceeding.

We take this opportunity to clarify the status of the parties in the district court appeal of a condemnation proceeding. Initially, as the condemnor is the party initiating the proceeding, the condemnor is the plaintiff and the condemnee is the defendant at the county court level. But this can change at the district court level. Under prior versions of Neb. Rev. Stat. § 76-717 (Reissue 2009), no matter who appealed from the

---

[23] Neb. Ct. R. App. P. § 2-101(E) (rev. 2010).

appraisers' award, the condemnee was always denominated as "the plaintiff" and the condemnor was always denominated as "the defendant."[24]

[7] This changed in 1995 when the Legislature removed that language and substituted the following: "The first party to perfect an appeal shall file a petition on appeal in the district court . . . ."[25] The change was meant to place the onus of filing a petition on the party who was appealing the appraisers' award rather than always requiring the condemnee to do so.[26] And because the district court appeal is a "de novo" proceeding,[27] which contemplates the "'filing of pleadings and the framing of issues,'"[28] no longer is the condemnee automatically the plaintiff in the district court proceeding. Rather, who the plaintiff is depends on who appeals first from the appraisers' award. So on appeal, the City was the defendant.

We give statutory language its plain and ordinary meaning.[29] Section 25-901 provides that "[t]he defendant" may offer to confess judgment. The statute also provides that the defendant may do so "in an action for the recovery of money only." While the City is the defendant in this condemnation proceeding, such a proceeding is not "for the recovery of money only." As such, the City's offer to confess judgment was invalid.

Here, the proceeding was a condemnation proceeding commenced by the City against Pinnacle. A condemnation proceeding is "the exercise of eminent domain by a governmental

---

[24] See, 1961 Neb. Laws, ch. 369, § 2, p. 1142; 1973 Neb. Laws, L.B. 226, § 29; 1983 Neb. Laws, L.B. 270, § 1; *Dawson v. Papio Nat. Resources Dist.*, 210 Neb. 100, 313 N.W.2d 242 (1981); *Estate of Tetherow v. State*, 193 Neb. 150, 226 N.W.2d 116 (1975).

[25] § 76-717; 1995 Neb. Laws, L.B. 222.

[26] See Floor Debate, L.B. 222, Judiciary Committee, 94th Leg., 1st Sess. 1166-68 (Feb. 10, 1995).

[27] § 76-717.

[28] *Armstrong v. County of Dixon*, 282 Neb. 623, 632, 808 N.W.2d 37, 44 (2011).

[29] See, e.g., *Spady v. Spady*, 284 Neb. 885, 824 N.W.2d 366 (2012).

entity."[30] Eminent domain is "[t]he inherent power of a governmental entity to take privately owned property, esp[ecially] land, and convert it to public use, subject to reasonable compensation for the taking."[31] In other words, the condemnation proceeding in this case was a proceeding for the recovery of land, not money.

The proceeding does not change simply because Pinnacle appealed the appraisers' award to the district court. It is true that the district court proceeding is a de novo proceeding which contemplates the filing of pleadings and the framing of issues.[32] But it is not a new proceeding. We recognized this in *Wooden v. County of Douglas*,[33] when we explained that "the [condemnee's] petition on appeal . . . was not the commencement of a new action, but simply a continuation of the condemnation action filed by the County."[34] And, as noted above, a condemnation proceeding is not "for the recovery of money only." Section 25-901 does not apply, and so the City's offer to confess judgment was invalid.

Because § 25-901 is inapplicable here, the issues regarding interest, fees, expenses, and costs are straightforward. Under § 76-711, the court properly awarded interest to Pinnacle. Section 76-711 states: "If an appeal is taken from the award of the appraisers by the condemnee and the condemnee obtains a greater amount than that allowed by the appraisers, the condemnee shall be entitled to interest . . . ." Here, Pinnacle obtained a "greater amount" from the jury than that allowed by the appraisers, so the court correctly awarded interest to Pinnacle.

Under § 76-720, the court also properly awarded attorney and expert witness fees to Pinnacle. Section 76-720 states:

> If an appeal is taken from the award of the appraisers by the condemnee and the amount of the final judgment

---

[30] Black's Law Dictionary 332 (9th ed. 2009).

[31] *Id.* at 601.

[32] See *Armstrong, supra* note 28.

[33] *Wooden v. County of Douglas*, 275 Neb. 971, 751 N.W.2d 151 (2008).

[34] *Id.* at 977, 751 N.W.2d at 156. Cf. *Armstrong, supra* note 28.

is greater by fifteen percent than the amount of the award, . . . the court may in its discretion award to the condemnee a reasonable sum for the fees of his or her attorney and for fees necessarily incurred for not more than two expert witnesses.

The court awarded such fees, and we find no abuse of discretion.

The district court also awarded "costs" to Pinnacle. From the court's order, we read "costs" to include the deposition expenses for $1,419.50. We have treated such expenses as costs in the past.[35] Unlike interest and fees, however, the eminent domain statutes do not expressly allow the court to award costs when the condemnee appeals the appraisers' award and obtains a greater amount from the jury. Nevertheless, the court's award of costs was proper under our case law.[36]

## CONCLUSION

We conclude that the court's January 2012 order was a final order from which Pinnacle failed to timely appeal. We also conclude that the City's offer to confess judgment was invalid and that the court's award of interest, fees, expenses, and costs was proper.

AFFIRMED.

---

[35] See, e.g., *Bunnell v. Burlington Northern RR. Co.*, 247 Neb. 743, 530 N.W.2d 230 (1995).

[36] *Keller v. State*, 184 Neb. 853, 172 N.W.2d 782 (1969).

---

STATE OF NEBRASKA, APPELLEE, V.
ARMON M. DIXON, APPELLANT.
___ N.W.2d ___

Filed July 26, 2013.    No. S-12-525.

1. **Motions for Mistrial: Appeal and Error.** Whether to grant a motion for mistrial is within the trial court's discretion, and an appellate court will not disturb its ruling unless the court abused its discretion.